[Crim. No. 7054. Second Dist., Div. Two. July 15, 1960.]

THE PEOPLE, Respondent, v. KRIS G. ALBERT, Appellant.

*Assigned by Chairman of Judicial Council.

Maurice Rose, Myron L. Garon and John J. Hall for Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Jack K. Weber, Deputy Attorney General, for Respondent.

RICHARDS, J. pro tem.*—Defendant was charged by indictment of a violation of section 653f of the Penal Code with having solicited Michael Flores Angulo to commit the crime of murder of Pearl Albert, who was the defendant's wife. He was found guilty by a jury and was sentenced to the state prison for the term prescribed by law, with execution stayed pending appeal. His motion for a new trial was denied. He appeals from the judgment and from the order denying his motion for a new trial.

Appellant does not challenge the sufficiency of the evidence to sustain the conviction, hence we shall summarize the evidence as shown by the record primarily insofar as it is relevant to the grounds upon which defendant seeks reversal.

Pearl Albert, defendant's wife, was married to him in 1941, and soon thereafter suffered a serious illness resulting in a gradual paralysis so that by 1959 she was almost completely paralyzed, and when not in bed, was confined to a wheel chair. She and defendant separated in 1953, and in a property settlement agreement growing out of divorce proceedings, defendant guaranteed the payment of a stipulated monthly amount for her support.

Angulo resides in the town of Agoura in the San Fernando Valley. On either March 8th or 10th, 1959, defendant, whom Angulo had known for approximately one year, went to Angulo's home, and in a private conversation with Angulo, which lasted about fifteen minutes, said that his wife was giving him a lot of difficulty, that he wanted her out of the way, and that it was worth $5,000 to him. After the conversation was over, Angulo first went to the State Highway Patrol and within a day or so to the downtown headquarters of the Los Angeles Police Department. Angulo related to the police his conversation with the defendant, and at their suggestion, the defendant was telephoned and Angulo told him that he

---

*Assigned by Chairman of Judicial Council.

was calling from Los Angeles because he had brought his daughter to the county hospital and that she needed a surgical operation for her tonsils. Angulo made an appointment with defendant for that same day at Angulo's home. Angulo's telephonic statement to the defendant was not entirely true and was made in order to effect another meeting between Angulo and the defendant. After the telephone conversation, the police fitted Angulo with a Minifon[1] (a self-contained recording device) strapped from the shoulder and hidden under the arm and operated by a push button. He was instructed by the police not to use it in an automobile if the radio or motor was operating.

Defendant came to Angulo's home later that day in his automobile and when Angulo went out to meet him, defendant asked Angulo to get in the car. Angulo demurred, using as an excuse that he was waiting for a telephone call next door. Defendant insisted that Angulo get in, which Angulo finally did, the Minifon then being concealed on his person. After driving about a block the defendant stopped and parked the car at Angulo's request. After some preliminary conversation about Angulo's daughter, there followed the conversation in the car constituting the solicitation which was recorded on the Minifon and was the subject of testimony by Angulo. In this conversation, clearly sufficient to establish a solicitation to commit murder and defendant does not contend otherwise, defendant discussed Mrs. Albert's feeble condition and the ease with which she could be done away with by smothering. He suggested how to handle the housekeeper if she were present and suggested that Angulo could gain entrance on the pretext of a holdup or that he wanted to use a telephone because of car trouble. Defendant told Angulo how Mrs. Albert had suffered and that it would be an act of mercy. When asked by Angulo why defendant wanted to do away with his wife, defendant said that the problem was getting progressively worse and worse, and that it might be a month or a year or more for her "just to keel over." Angulo asked how much it was worth and the defendant said that he had already told him $1,000. Angulo replied that he thought it was $5,000, to which the defendant answered that it was not

---

[1]The instrument referred to is variously spelled in the record and briefs as either "Minifon" or "Minifone." It was described by a Los Angeles police officer attached to the Electronic Section of the Scientific Investigation Division as "a miniature wire recorder that is battery operated and capable of being concealed under a person's clothing."

worth that much, that she was apt to die on her own and that he had been tempted to do it himself but that he would be under suspicion. Angulo finally said that it was a deal as he needed the money. The defendant gave him $50 in currency and said he would return within a week with the balance. The defendant did not take the stand at the trial, and offered no evidence that the conversation in the car did not take place other than evidence as to the credibility of Angulo.

The following grounds for reversal are urged:

*Error in Receiving Recorded Conversation*

Defendant contends that the wire recording obtained by the use of the concealed Minifon was illegally obtained by a fraudulent entry into defendant's automobile, and hence, under *People* v. *Cahan*, 44 Cal.2d 434 [282 P.2d 905, 50 A.L.R. 2d 513], inadmissible. In support of this contention the defendant relies chiefly upon *People* v. *Tarantino*, 45 Cal.2d 590 [290 P.2d 505], which is clearly distinguishable in that the entry there was made into premises without permission and constituted a trespass, and that a hidden microphone was installed with wires leading to a nearby building where the recordings were made. The uncontroverted evidence here is that it was defendant who first invited Angulo into the automobile and that it was only after Angulo attempted to avoid holding a conversation in the car that he did get in at defendant's insistence. Here there was no ''clandestine eavesdropping'' (*People* v. *Tarantino, supra,* p. 595) for the defendant knew that whatever he said to Angulo could be repeated by him to others. Where the defendant ''freely consents to an entry or search, . . . his constitutional rights are not violated and any search or taking of evidence pursuant to his consent is not unreasonable'' (*People* v. *Michael*, 45 Cal.2d 751, 753 [290 P.2d 852]). Where the entry is by invitation of the defendant, a secret recording of a vis-a-vis conversation is not inadmissible as violative of the search and seizure provisions of the United States Constitution (4th and 14th Amendments) or of the California Constitution (art. I, § 19), whether the recording be by means of a self-contained recording device (*People* v. *Wojahn*, 169 Cal.App.2d 135, 142-145 [337 P.2d 192] (hearing den.); *People* v. *Goldberg*, 152 Cal. App.2d 562, 573 [314 P.2d 151] (hearing den.)), or by means of a concealed wireless transmitter where the recording is made at another location. (*People* v. *Avas*, 144 Cal.App.2d 91, 98-99 [300 P.2d 695] (hearing den.); *People* v. *Mackenzie*, 144 Cal.App.2d 100, 106-107 [300 P.2d 100] (hearing den.).)

While it is clear that Angulo only entered defendant's automobile after he had been invited so to do by defendant, it is argued that "installation and use of the Minifon by the police officials in defendant's automobile was not rendered legal by defendant's consent that Angulo enter his automobile, and such consent was obtained by their affirmative misrepresentations and false pretenses." By "misrepresentations and false pretenses" defendant refers to the telephone conversation between Angulo and defendant originating at the police headquarters and which preceded the meeting at Angulo's home, and in which telephone conversation Angulo did make certain misleading statements as to his daughter's condition, and which he testified were made so as to effect another meeting with defendant. While we recognize that an "entry obtained by trickery, stealth or subterfuge renders a search and seizure invalid" (*People* v. *Roberts,* 47 Cal.2d 374, 378 [303 P.2d 721]), however, we are unable to conclude that the telephonic statements by Angulo had any causal relation to his entry into the defendant's car, in view of the circumstances that Angulo did not seek or request to make the entry but sought to avoid it and the entry by him was made only at the defendant's insistence. (See *On Lee* v. *United States,* 343 U.S. 747, 752-753 [72 S.Ct. 967, 96 L.Ed. 1270, 1275].) *Fraternal Order of Eagles No. 778* v. *United States,* 57 F.2d 93, cited by defendant, is readily distinguishable in that there the Government prohibition agents were admitted to appellant's lodge room upon presentation of forged membership cards surreptitiously taken from other lodges of the same fraternal order.

Defendant asserts, as a further claim of error in admitting the wire recording, that a misdemeanor was committed in making use of the recording device in violation of Penal Code, section 653h, which reads in part: "Any person who, without consent of the owner . . . installs or attempts to install or use a dictograph in any . . . vehicle, is guilty of a misdemeanor . . ." This argument assumes that the Minifon and a dictograph are one and the same. We have concluded that the instrument here involved, a self-contained recorder, is not a "dictograph" within the language or intendment of section 653h.

By definition,[2] a dictograph is an instrument for

---

[2]Webster's New International Dictionary, 2d ed.: "Dictograph . . . a trade mark for a telephonic instrument having a sound-magnifying device that makes possible the transmission of sounds from a room in which the transmitter is stationed or concealed; hence . . . the instru-

the electrical transmission of sound from the place where the sound is received to another place where the sound is made audible. While undefined by judicial decision in California, it is clear from the various decisions involving various types of listening devices, that only a device coming within the above description has been considered to be a "dictograph" within the intendment of section 653h. In *People* v. *Cahan, supra,* 44 Cal.2d 434, a hidden microphone was placed under a chest of drawers and connected by wires to a listening post in a nearby garage where recordings were made. The court said (p. 437) : "Section 653h of the Penal Code does not and could not authorize violations of the Constitution, and the proviso under which the officers purported to act at most prevents their conduct from constituting a violation of that section itself." In *People* v. *Tarantino, supra,* 45 Cal.2d 590, a microphone was installed behind a small hole in the ceiling of defendant's hotel room and wires were strung into an apartment in a nearby building where the conversations which took place in defendant's room were listened to and recorded. It is clear from the decision that the court considered the installation of the hidden microphone and transmission to another place as the interdicted conduct under section 653h. In *Wirin* v. *Parker,* 48 Cal.2d 890 [313 P.2d 844], the term of "dictograph installation" referred to the installation of hidden microphones connected by wires to another place where an officer may secretly "hear or record such sounds." The court there refers to such conduct as "eavesdropping by use of concealed microphones to record private conversations." In *People* v. *Channel,* 107 Cal.App.2d 192 [236 P.2d 654], a "listening device" (in a bedroom) connected with a concealed microphone in the living room was held to have been consented to and hence not a violation of section 653h. No contention was made in the Avas, Goldberg

ment bearing this trade mark. The ordinary mouth piece is not required. The Dictograph is used as an interoffice telephone, esp. for dictating to a stenographer in another room and is also employed to obtain evidence for court use."

26A C.J.S., page 935, defines "Dictagraph": "A telephone capable of reproducing sounds made at considerable distance from the transmitter and audible at corresponding distances from the receiver; and so not necessarily a recording machine like a phonograph, but a concealed telephone transmitter which reproduces the sound in the next room by a receiver."

42 Cal.L.Rev., page 730, n.2: "Dictograph: An electronic listening device, the use of which (sometimes called 'bugging') consists of placing an open microphone in a room in an inconspicuous place, thus enabling the listener to hear and record all sounds which take place in that room."

or Mackenzie cases that a face to face conversation recorded either by means of a concealed recorder or by means of a concealed wireless transmitter, was a violation of section 653h. In *People* v. *Wojahn, supra,* 169 Cal.App.2d 135, involving a Minifon, the court said at page 143: "It is doubtful if the microphone used here is a 'dictograph.' Assuming that it is, the section could not have been intended to cover a recording device of the type and use made of it under the circumstances of this case." There has not been cited to us, nor have we been able to find any authority holding that a self-contained device such as the Minifon here used is a "dictograph" within the meaning and intendment of section 653h.

The obvious purpose of section 653h was to proscribe electronic eavesdropping and not the recordation of a face to face conversation, the recreation of which would probably be more accurate from the recording than from the memory of the participants.

### Error in Withdrawing Issue from Jury

Defendant's argument here is obscure as we are unable to determine precisely what "issue" he contends was withdrawn from the jury. Apparently analogizing from the established procedure in case of a confession, he contends that the evidence of the manner in which Angulo arranged the second meeting with defendant, and the evidence as to the circumstances under which Angulo entered defendant's car involving the question of consent and having been heard by the jury before the trial court ruled on the admissibility of Angulo's testimony of the recorded conversation and the Minifon recording itself, the issue of whether the search or seizure was legal or illegal should have been submitted as an issue of fact to the jury. If this be defendant's contention it is not tenable. The same contention was argued in *People* v. *Gorg,* 45 Cal.2d 776 [291 P.2d 469], and the court said at page 781: "Defendant urges, however, that the same procedure should be followed as in the case of a confession, where the trial court initially determines the question of admissibility and then instructs the jury to disregard the confession if they find that it was not freely and voluntarily made. The rule of the confession cases is justified by the fact that the jury must necessarily be informed of the circumstances surrounding the confession properly to evaluate it. The probative value of the evidence obtained by a search or seizure, however, does not depend on whether the search or seizure was legal or

illegal, and no purpose would be served by having the jury make a second determination of that issue.'' (Accord: *People v. Griffin,* 162 Cal.App.2d 712, 715 [328 P.2d 502].)

It is not contended that any of the evidence heard by the jury involving the question of consent was not relevant or material on the issue of guilt nor that any of such evidence was prejudicial.

Defendant's argument that the court ''withdraw the questions of fact relating to the manner in which Angulo obtained access into defendant's automobile from the jury even to the extent that the evidence reflected on the credibility of the People's witnesses'' is not borne out by the record. The court properly reserved for itself the decision on admissibility, but did not withdraw the issue of the witnesses' credibility from the jury, if it was in any way affected by the evidence relating to the prior conversation between Angulo and the defendant prior to the conversation in the car.

### Error in Admitting Entire Transcript of Angulo's Television Appearance

Angulo testified that during the car conversation the defendant gave him $50, consisting of two $20 bills and one $10 bill, which were identified by him and received in evidence. He further testified that defendant said that he would bring ''the rest of the money later on in the week.'' This testimony obviously created an inference that the $50 was a down payment to Angulo in return for his agreement to do away with Mrs. Albert. On cross-examination defendant sought to dispel this inference and to impeach Angulo by confronting him with a limited portion of the transcript of a television appearance made by Angulo. From this transcript, it appeared that the television interviewer related to Angulo a purported statement of the defendant that he (defendant) had given Angulo $50 because Angulo had told defendant that his (Angulo's) daughter was in need of an operation. Angulo was asked by the interviewer what he had to say to that and Angulo replied: ''That's the excuse I told him I needed the money for'' and also that he did tell the defendant that he needed the money. Unexplained, this created an apparent contradiction in Angulo's testimony. To explain this apparent inconsistency, the prosecution, over defendant's objection, was permitted to put into evidence other portions of the same interview which, in substance, were a repetition of Angulo's testimony of the car conversation and to the effect that defendant agreed to pay Angulo $1,000 to kill Mrs. Albert and

that defendant gave him the $50 that night and promised to pay the balance within a week.

The "entire conversation" rule (Code Civ. Proc., § 1854) does not permit reception of other portions of a conversation which are not explanatory of that which has been brought out by the adversary, and which are intrinsically inadmissible. (*People* v. *McCoy*, 25 Cal.2d 177, 187 [153 P.2d 315] ; *Crosby* v. *Martinez*, 159 Cal.App.2d 534, 539 [324 P.2d 26].) However, it is well established that when the defense has endeavored to discredit a prosecution witness by calling attention to a part of a prior statement apparently inconsistent with the witness' testimony at the trial, the district attorney may properly question the witness as to the other parts of the statement for the purpose of explaining the apparent inconsistencies. (*People* v. *Ferdinand*, 194 Cal. 555, 562-563 [229 P. 341] ; *People* v. *Kennedy*, 21 Cal.App.2d 185, 200 [69 P.2d 224] ; *People* v. *Miller*, 56 Cal.App. 472, 477 [206 P. 89] ; *People* v. *Valencia*, 27 Cal.App. 407, 409 [150 P. 68].)

### Error in Playing Tape Recording of a Wire Recording

Defendant asserts error by the receipt in evidence of a tape recording made from the Minifon wire recording of the car conversation. An officer of the scientific investigation division of the police department was examined at length as to the manner in which the tape recording was made and testified that it accurately reflected the exact words on the wire recording. The only grounds of objection urged by defendant to the introduction of the tape recording are that it was illegally obtained by use of the Minifon, that there was no sufficient foundation for its introduction and that it was secondary evidence.

Defendant now vaguely hints at the fragility of the wire recording and the potentiality of a tape recording not disclosing sections of the wire recording which might be cut out, yet he makes no claim that the tape recording is not itself a recording of the entire Minifon wire recording.

The foundation for the admission of the tape recording was entirely sufficient and it is settled that, a proper foundation having been established, re-recordings are admissible in evidence. (*People* v. *Wojahn*, *supra*, 169 Cal.App.2d 135, 146 ; *People* v. *Porter*, 105 Cal.App.2d 324, 330-331 [233 P.2d 102].)

### Error in Reading Transcript of Tape Recording

A reporter, experienced in making transcripts from tape and Minifon recordings, made and identified a

written transcript of the tape recording of the car conversation which was received in evidence over defendant's objection on the ground that it was repetitive and not primary evidence. Defendant here urges the same ground without pertinent citation of authority. Significantly, defendant makes no claim that the transcript did not accurately set forth the conversation as recorded on the Minifon. The best evidence rule has been held inapplicable to tape re-recordings (*People* v. *Wojahn, supra,* p. 146; *People* v. *Stephens,* 117 Cal.App.2d 653, 660 [256 P.2d 1033]), and there appears to be no logical reason why the same rule should not apply to a written transcript of a recording. Pertinent to the objection of repetition is Code of Civil Procedure, section 2044: "The Court must exercise a reasonable control over the mode of interrogation, so as to make it as rapid, as distinct, as little annoying to the witness, and as effective for the extraction of the truth, as may be; but subject to this rule, the parties may put such pertinent and legal questions as they see fit. The court, however, may stop the production of further evidence upon any particular point when the evidence upon it is already so full as to preclude reasonable doubt." It cannot be gainsaid that the trial judge is vested with a wide discretion to reasonably regulate the introduction of cumulative evidence. His lodestar, expressed in the code section just quoted, is to make the interrogation of witnesses "as effective for the extraction of the truth, as may be." Concededly the words on the wire recording and tape recording were not equally audible or distinguishable when played without interruption, but when played back several times became distinguishable and understandable on a continuous playing of the recording. This was the justifiable purpose of the transcript. Certainly it was to the defendant's interest to have a correct transcription of the recording and he has not pointed out a single instance of anything favorable to him which was omitted from the transcript, nor anything included therein that was not audible in the recording.

*Error in Limitation of Cross-examination of Mrs. Albert*

 Mrs. Albert, wife of the defendant, was called as a witness by the prosecution and testified that defendant had been paying her alimony from which the jury might draw an inference of the defendant's motive to have her murdered. By cross-examination and an offer of proof, counsel for defendant sought to establish that Mrs. Albert wanted her husband defended; that she helped to raise his bail and that

she had told the police she "just couldn't believe that he would do anything like that." Objections to these questions and to the offer of proof were sustained but the court advised defendant's counsel that he could by direct question to the witness elicit her attitude toward the defendant. Counsel declined to so interrogate the witness, insisting that he was entitled to establish her belief in the defendant's innocence as shown by her conduct. Obviously an expression of opinion by a witness of the guilt or innocence of a person charged with crime made either during the trial (*People* v. *Creegan & Becker*, 121 Cal. 554, 559 [53 P. 1082]), or extra-judicially before the trial (*People* v. *Darr*, 3 Cal.App. 50, 53 [84 P. 457]) is not admissible.

## Misconduct of Prosecuting Attorney

Defendant claims seven instances of alleged prejudicial misconduct by the prosecuting attorney during the examination of witnesses and during his argument to the jury. We have scrupulously examined each such claim of misconduct and find none, much less reversible error resulting therefrom. In approaching a claim of prejudicial misconduct, we find the general rule in *People* v. *Berryman*, 6 Cal.2d 331, 337 [57 P.2d 136], recently quoted in *People* v. *Lyons*, 50 Cal.2d 245, 262 [324 P.2d 556], as follows: "The general rule regarding misconduct of the district attorney which tends to and is likely to result in prejudice to the defendant is that where no objection is made to such misconduct by the defendant, or where objection is made and the court sustains the objection and properly admonishes the jury, the misconduct claimed to be prejudicial to defendant's rights will not furnish grounds sufficient to justify the granting of a new trial or the reversal of the judgment. [Citation.] There are two exceptions to this general rule. One is where the case is closely balanced and there is grave doubt of defendant's guilt, and the acts of misconduct are such as to contribute materially to the verdict, a miscarriage of justice results requiring a reversal. [Citations.] The other exception is where the act done or remark made is of such a character that a harmful result cannot be obviated or cured by any retraction of counsel or instruction of the court. In such cases the misconduct will furnish ground for a reversal of the judgment, even where proper admonitions are given by the court. [Citations.]"

In only one instance did defendant offer any objection.

This is not a close case. Basically, it is extremely simple. Did defendant solicit Angulo to murder Mrs. Albert? The evidence of the solicitation rested not only in the memory of Angulo but in the imperishable recording. Defendant neither took the stand to deny the conversation nor offer any evidence whatsoever to question the fact that the car conversation did not take place.

The one instance to which objection was made concerns part of the prosecutor's argument to the jury as to defendant's character as exemplified by his reducing his offer from $5,000 to $1,000, and then only having $50 with him which he gave to Angulo, and in connection with this argument, the prosecutor predicted that if Angulo had proceeded and murdered Mrs. Albert, he never would have received anything more from the defendant. Defendant, without citing authority, contends this constituted a statement of the prosecutor's belief unsupported by any evidence. The contention is untenable. (See *People* v. *Reznick*, 75 Cal.App.2d 832, 841 [171 P.2d 952].) The statement was a mere prediction, and not the assertion of a belief in an existing fact based upon evidence not before the jury.

The prosecution called Mrs. Albert as a witness to testify concerning defendant's financial obligations to her as furnishing a possible motive for his solicitation. Defendant contends the calling of Mrs. Albert as a witness was prejudicial because her hopelessly crippled condition as evident to the jury aroused their pity and corresponding prejudice against the defendant. No objection was made by the defendant to her appearance and no contention is now made that her testimony was not relevant or material.

Defendant cannot complain of incidental prejudice, if any, created by her appearance.

Another instance of claimed misconduct, and to which defendant voiced no objection at the trial, includes an inadvertent misquotation of one word in a statute which was immediately cured by the defendant's objection. Another claimed instance is based upon a request of the prosecuting attorney for an exemplar of a witness' handwriting. Still another was a comment by the district attorney, during argument, that regardless of Angulo's credibility, the evidence from the recordings was sufficient to convict. In none of these do we find prejudicial misconduct of the prosecuting attorney.

*Error in Instructions*

(1) The court instructed concerning defendant's

failure to testify. No claim of error is made as to the instructions given. However, defendant claims error in the failure of the court on its own motion to add to the instruction given that, in substance, if defendant had not taken the stand on advice of counsel so as not to waive his objection to the admissibility of the evidence, that such reason could be taken into account by the jury. No request was made for an instruction on this specific subject (*People* v. *Turville,* 51 Cal.2d 620, 633, 634 [335 P.2d 678]), nor does the defendant cite anything in the record that he had been so advised.

(2) The defendant submitted an instruction on the corroboration required under Penal Code, section 653h, reading in part as follows: ''The corroboration must tend to connect the defendant *not with said Angulo, but* with the alleged offense itself'' (emphasis supplied). The court modified the requested instruction by eliminating the emphasized words. In view of the fact that the same instruction submitted by defendant began as follows: ''Evidence of the defendant's acquaintance with Michael Flores Angulo is not of itself sufficient corroboration required by law'' we see no error in the modification by elimination of repetitive provisions. Having instructed on the specific point that defendant's acquaintance with Angulo is not of itself sufficient corroboration, the court then generalizes that corroboration must tend to connect the defendant with the alleged offense.

(3) Defendant complains of the court's modification of two other instructions on corroboration requested by him. The modification consisted of deleting unnecessary adjectives and reference to specific testimony. As modified, the instructions were each a correct general statement of the principle involved.

(4) The court refused to instruct that installation of a dictograph in a vehicle without consent was a misdemeanor and an unlawful search and seizure. We have already determined that this was a question of law and not an issue for the jury.

(5) Having adequately instructed on determining the credibility of witnesses, an additional instruction offered by defendant and refused was not only redundant, but was not a complete or correct statement of the law.

(6) The court gave CALJIC instructions Numbers 1 and 21. Without citation of authority defendant asserts error in refusal to give a proffered instruction which is essen-

tially a repetition of the two instructions given. ▮ Repetition of instructions is not only not required but should be avoided. (48 Cal.Jur.2d, p. 482.)

The demonstrability of defendant's guilt is established by the irrefutable, immutable and imperishable recordation of his own voice in making his nefarious proposition to Angulo. Defendant received a fair trial, free of prejudicial error.

Judgment and order denying motion for new trial are affirmed.

Fox, P. J., and Ashburn, J., concurred.

A petition for a rehearing was denied August 9, 1960, and appellant's petition for a hearing by the Supreme Court was denied September 7, 1960.