[Crim. No. 19652. Second Dist., Div. Four. Feb. 16, 1972.]

THE PEOPLE, Plaintiff and Respondent, v.
LORRIE FAITH RAND, Defendant and Appellant.

[Crim. No. 20113. Second Dist., Div. Four. Feb. 16, 1972.]

THE PEOPLE, Plaintiff and Respondent, v.
IGNACIO GARCIA, Defendant and Appellant.

[Crim. No. 20454. Second Dist., Div. Four. Feb. 16, 1972.]

THE PEOPLE, Plaintiff and Respondent, v.
JAMES O'MALLEY, Defendant and Appellant.

(Consolidated Appeals.)

## COUNSEL

George H. Chula, Harvey E. Byron and Joseph Shemaria for Defendants and Appellants.

Evelle J. Younger, Attorney General, William E. James, Assistant Attorney General, Ronald S. Marks, Ronald M. Weiskopf and Norman H. Sokolow, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**KINGSLEY, J.**—We have consolidated these three cases for disposition in this one opinion because all three turn, primarily, on the same problem.

Each defendant was charged with a narcotic offense.[1] In each case the evidence necessary to support the conviction was obtained in the following manner:

After the police had received information[2] as to the narcotic activity of the defendant, police officers were posted to observe and control any exit from defendant's residence—whether by door or window and whether the

---

[1]Rand (No. 19652): Possession of marijuana, in violation of section 11530 of the Health and Safety Code.

Garcia (No. 20113): Possession of a dangerous drug in violation of section 11911 of the Health and Safety Code; possession of marijuana, in violation of section 11530 of that code.

O'Malley (No. 20454): Possession of marijuana for sale, in violation of section 11530.5 of the Health and Safety Code; possession for sale of a dangerous drug, in violation of section 11911 of that code.

[2]As we discuss below, in Rand (No. 19652) and in Garcia (No. 20113) the informant was not shown to have been "credible"; in O'Malley (No. 20454) the record shows some basis for a claim of credibility in the informant therein involved.

exit was of the suspect himself, or of another, with or without narcotics, or whether by throwing objects out of a window or door. After the police were so stationed, by pre-arrangement, a police officer telephoned defendant, claiming to be "a friend" and warning defendant that "the police are coming; get rid of the stuff" or similar words. Panicked by the call, each defendant collected his supply of narcotics and ran from the house.[3] In each case, the defendant was accosted by a police officer, identified as such to the defendant, who ordered him to stop for questioning about narcotics. Further panicked by that request, the defendant threw away the container in which he was carrying the narcotics. The container was recovered by the police and, when they discovered it contained a narcotic, the defendant was arrested. No arrests were made prior to the recovery and examination of the discarded container.

Each defendant duly moved to suppress the physical evidence secured as above; the motions were denied; convictions followed.[4] Each defendant has appealed; we affirm.

## I

Defendants rely on the doctrine expressed in *People* v. *Reeves* (1964) 61 Cal.2d 268 [38 Cal.Rptr. 1, 391 P.2d 393], wherein the Supreme Court held that evidence was illegally obtained when police officers gained entry into a defendant's room by use of a ruse and subterfuge. That case is not pertinent here. The pertinent language in *Reeves* is as follows: "It is well settled by both federal and state decisions that '*an entry* obtained by trickery, stealth or subterfuge renders a search and seizure invalid.' (*People* v. *Roberts,* 47 Cal.2d 374, 378 [303 P.2d 721]; to the same effect see *People* v. *Albert,* 182 Cal.App.2d 729, 737 [6 Cal.Rptr. 473]; *Gouled* v. *United States,* 255 U.S. 298, 305 [65 L.Ed. 647, 651, 41 S.Ct. 261]; *Fraternal Order of Eagles, No. 778* v. *United States,* 57 F.2d 93)." (*People* v. *Reeves* (1964) 61 Cal.2d 268, 273 [38 Cal.Rptr. 1, 391 P.2d 393].) (Italics added.)

In other words, *Reeves* holds only that, where the subterfuge is used to

---

[3] Rand had collected sundry partially smoked marijuana cigarettes in a bowl, which she carried as she left the house. Garcia and O'Malley carried their various narcotics in brown paper bags.

[4] Rand pled guilty after her motion under section 1538.5 was denied; she was granted summary probation.

Garcia submitted the case on the preliminary transcript; he was found guilty of the section 11911 violation; the other count was dismissed; he was granted probation with jail time as a condition.

O'Malley pled guilty to the charge of possession of marijuana for sale; the other count was dismissed; probation was denied and a prison sentence was imposed.

obtain an entry otherwise *not* legally permissible, the use of a trick or stratagem is legally improper. The distinction was pointed out in *People* v. *Miller* (1967) 248 Cal.App.2d 731 [56 Cal.Rptr. 865], where the court said (at p. 739): "It is one thing to use deception to cause the defendant to do something which he would not otherwise have done—but it is quite another matter to use trickery for the purpose of making a visual entry into his room, in other words, a search."

Many cases have held that the mere fact that a suspect is led to incriminate himself by use of some ruse or stratagem does not make the evidence thus obtained inadmissible. We cite, merely for illustration: *Hoffa* v. *United States* (1966) 385 U.S. 293 [17 L.Ed.2d 374, 87 S.Ct. 408]; *Lewis* v. *United States* (1966) 385 U.S. 206 [17 L.Ed.2d 312, 87 S.Ct. 424]; *People* v. *Ramirez* (1970) 4 Cal.App.3d 154 [84 Cal.Rptr. 104]; *People* v. *Tambini* (1969) 275 Cal.App.2d 757, 762 [80 Cal.Rptr. 179]; *People* v. *Boulad* (1965) 235 Cal.App.2d 118, 126 [45 Cal.Rptr. 104]. As the Attorney General points out, were we to accept the defense argument made in the cases at bench, all under-cover activity would likewise be proscribed. Where the ruse does no more than to cause a defendant, activated by his own decision, to do an incriminating act—whether that act be a sale to an undercover agent or a jettisoning of incriminating material—no illegality exists.

## II

█ Contrary to defendant Rand's contention, there was no duty to disclose the identity of the informant in her case. The informant was not a witness to the offense charged nor is there any showing that the informant could have given any testimony favorable to Miss Rand. The police are entitled to pursue and investigate any tip, whether from a reliable or an unreliable source. The informant had done no more than to alert the officers to a possibly fruitful field of investigation. Similarly, the prosecution was under no duty to call a series of police officers to trace the course of the tip from the informant to the investigating officers.

## III

Since we hold that the conduct of the officers in telephoning the defendants, thus setting in motion the series of panic reactions above described, was not unlawful, we need not consider whether the officers had reasonable cause to arrest without the evidence secured by the ruse, nor need we consider arguments raised by Garcia and O'Malley which turn on the contention (above rejected) that the use of the telephone call was illegal.

## IV

█ O'Malley also contends that the telephone call made to him violated section 474 of the Penal Code.[5] Apart from the issue (which we do not here attempt to determine) of the right of the police to violate this statute as a means of detection, the short answer is that that section does not apply to a telephone call, however false the statements made, unless it purports to be a relay of a message received by the party initiating the call and transmitted by him as an intermediary. That was not the situation here.

On behalf of O'Malley (and the argument would apply equally to the other defendants), it is argued that the recent decision in *People* v. *Mijares* (1971) 6 Cal.3d 415 [99 Cal.Rptr. 139, 491 P.2d 1115], is applicable and that it dictates a reversal. Without considering the procedural problems involved in raising that point at this stage of the cases, we reject the argument on its merits. In *Mijares* the record contained no evidence to indicate that that defendant had had possession of the narcotic until he seized it for the sole purpose of throwing it away. Here the whole sequence of events supported the inference that each defendant had knowingly possessed the narcotics involved prior to the telephone calls and that each defendant had exercised a control both longer in time and greater in degree than the momentary and technical possession proved against *Mijares*.

The judgments (orders of probation in Nos. 19652 and 20113) are affirmed.

Jefferson, Acting P. J., and Dunn, J., concurred.

Petitions for a rehearing in Nos. 20113 and 20454 were denied March 7, 1972, and appellants' petitions for a hearing by the Supreme Court were denied April 12, 1972.

---

[5]Section 474. "Every person who knowingly and willfully sends by telegraph or telephone to any person a false or forged message, purporting to be from a telegraph or telephone office, or from any other person, or who willfully delivers or causes to be delivered to any person any such message falsely purporting to have been received by telegraph or telephone, or who furnishes, or conspires to furnish, or causes to be furnished to any agent, operator, or employee, to be sent by telegraph or telephone, or to be delivered, any such message, knowing the same to be false or forged, with the intent to deceive, injure, or defraud another, is punishable by imprisonment in the state prison not exceeding five years, or in the county jail not exceeding one year, or by fine not exceeding five thousand dollars, or by both such fine and imprisonment."