[Crim. No. 4473.    First Dist., Div. Two.    July 30, 1964.]

THE PEOPLE, Plaintiff and Appellant, v. CHARLES BIEHL, Defendant and Respondent.

Stanley Mosk, Attorney General, Albert W. Harris, Jr., and Henry B. Lasky, Deputy Attorneys General, for Plaintiff and Appellant.

No appearance for Defendant and Respondent.

Herbert R. Kessler as Amicus Curiae on behalf of Defendant and Respondent.

AGEE, J.—Defendant moved the superior court under section 995 of the Penal Code to set aside the information on the ground that the marijuana which he is charged with possessing was obtained by illegal search and seizure. The motion was granted and the People appeal from the order of dismissal.

The only witness who testified for the People at the preliminary hearing was state narcotic agent Noel. It was stipulated that the state chemist, if called, would testify that the 15 cigarettes found in defendant's apartment contained marijuana.

Noel's testimony that the defendant consented to the search was contradicted by the testimony of defendant and his wife. The committing magistrate stated that he was resolving this conflict in favor of the People and he thereupon held the defendant to answer. (Pen. Code, § 872.)

The superior court placed its own independent interpretation upon the evidence adduced at the preliminary hearing and concluded (1) that the agents had obtained admittance into defendant's apartment by a subterfuge and (2) that they had then so conducted themselves that defendant's consent to the search of his apartment was in submission to an implied assertion of authority.

It is true that an entry which is gained by trickery or subterfuge renders a search and seizure invalid (*People* v. *Roberts,* 47 Cal.2d 374, 378 [303 P.2d 721] ; *People* v. *Reeves,* 61 Cal.2d 268, 273 [38 Cal.Rptr. 1, 391 P.2d 393] ). It is also true that an apparent consent to a search may be involuntary if given in submission to an express or implied assertion of authority. (*Castaneda* v. *Superior Court,* 59 Cal.2d 439, 442-443 [30 Cal.Rptr. 1, 380 P.2d 641] ; *People* v. *Michael,* 45 Cal.2d 751, 754 [290 P.2d 852].)

However, neither the superior court nor an appellate court, in ruling upon a motion made under section 995 of the Penal Code, has the power to pass on *conflicts* in the evidence (*People* v. *Soto*, 144 Cal.App.2d 294, 296 [301 P.2d 45]) or to substitute its judgment as to the *weight* to be given to the evidence for that of the committing magistrate. (*People* v. *Platt*, 124 Cal.App.2d 123, 131 [268 P.2d 529].)

As stated in *People* v. *Jackson*, 146 Cal.App.2d 553, 556-557 [303 P.2d 767] : "In arriving at his decision the magistrate may weigh the evidence, may resolve conflicts, and may give or withhold credence to witnesses. In testing the sufficiency of the showing made before him on motion to quash the superior court cannot do these things."

In *Rogers* v. *Superior Court*, 46 Cal.2d 3 [291 P.2d 929], the Attorney General made the contention that "the scope of review [under § 995] is simply to determine whether the [committing] magistrate has held the defendant to answer without reasonable or probable cause to believe a public offense has been committed with which the defendant is connected, and not whether the magistrate erred on questions of admissibility of evidence." (P. 7.)

In reply, Mr. Justice Traynor stated : "We agree with this contention with this qualification : A defendant has been held to answer without reasonable or probable cause if his commitment is based entirely on incompetent evidence, ..." (p. 7).

In *Badillo* v. *Superior Court*, 46 Cal.2d 269 [294 P.2d 23], Justice Traynor commented on the qualification stated by him in *Rogers*, as follows: "No problem is presented in applying this rule in cases involving searches and seizures in which the facts bearing on the legality of the search or seizure are undisputed and establish as a matter of law that the evidence is or is not admissible. In many cases, however, the evidence before the magistrate bearing on this issue may be in conflict or susceptible of conflicting inferences or consist only of the testimony of prosecution witnesses, and under these circumstances the court in ruling on a motion to set aside the information will frequently not be in a position to make a final determination as to the admissibility of the evidence. Accordingly, the information should not be set aside on the ground that essential evidence was illegally obtained if there is any substantial evidence or applicable presumption to support a contrary conclusion [citations], and in such cases the ultimate decision on admissibility can be made at

the trial on the basis of all of the evidence bearing on the issue. [Citations.]''

█ In the instant case the evidence before the committing magistrate bearing on the issue of legality of the search is in conflict and can reasonably be interpreted so as to support the conclusion that the marijuana was legally obtained.

Noel's testimony is as follows: He and Irvin, a narcotic agent from the Sacramento office, drove to the premises on Broderick Street, San Francisco, where defendant and his wife occupied a lower apartment; it was about 4:30 in the afternoon; the agents sat in the car outside of the premises for about 30 minutes; then defendant and his wife came out; the officers identified themselves as narcotic agents and told defendant that they had a matter which they believed to be of urgency to discuss with him; Noel asked defendant whether he would care to talk in his apartment rather than out on the sidewalk and defendant said it was all right to go inside; defendant and his wife led the way into the apartment and all four sat down in the front room.

Noel further testified that one Russell Tranganza had been arrested in Sacramento; that the narcotics bureau had been informed and had reason to believe that defendant had some connection with Tranganza; that he and Irvin wanted to question defendant about any knowledge that defendant had about Tranganza's association with marijuana; that he did not have a search warrant for defendant's apartment or a warrant for his arrest; that he and Irvin had gone there with the intention of searching defendant's apartment if they could obtain defendant's permission to do so.

Noel testified that defendant stated that he knew Tranganza; that he had owned property with him; that he had had other business ventures with him; that they had ''played the horses together''; that he did not know anything about marijuana or Tranganza's association with it.

Noel further testified that, when asked if they could search the apartment, defendant replied '' 'Sure, go ahead, search all you want' ''; that pursuant to such permission Irvin found a foil-wrapped package of 15 marijuana cigarettes in a cardboard box which was on the kitchen table.

Defendant testified that when he and his wife came outside and had reached the front sidewalk, Agent Irvin approached and said that he wanted to talk about Mr. Tranganza; that defendant replied that he knew him; that Irvin said '' 'We insist that we talk to you inside, in the

house' ''; that defendant thereupon unlocked the front door and all four persons entered the apartment; that after talking for a while about Tranganza and marijuana plants growing on his property, Noel started toward the kitchen and Irvin went into the bedroom, whereupon defendant told them that he had not given them permission to do that and that "under false pretense you came into the house to discuss Mr. Tranganza and that was all."

The testimony of defendant's wife was that they were not threatened; that the agents were "kind" and "polite"; that "when they got up to look around" the defendant said that "he would not give consent to search and they had no right to look around his house or to search his house."

The record shows that the committing magistrate very carefully weighed and considered the testimony of defendant and his wife to the effect that no consent to search was given "as against the testimony of Inspector Noel, which is clear to the effect that consent was given." The magistrate concluded that he was "inclined to resolve the credibility of the witnesses in favor of the People."

We do not think that the record in the instant case is such that the superior court was justified in holding *as a matter of law* that the entry into the apartment was obtained by a subterfuge or that the consent of defendant to the search was in submission to an implied assertion of authority by the agents.

Order reversed.

Shoemaker, P. J., and Taylor, J., concurred.