[Civ. No. 33995. Second Dist., Div. Five. Apr. 7, 1969.]

THE PEOPLE, Petitioner, v. THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent; GEORGE EMORY MACE, JR., et al., Real Parties in Interest.

Evelle J. Younger, District Attorney, Harry Wood and Maurice H. Oppenheim, Deputy District Attorneys, for Petitioner.

No appearance for Respondent.

Richard S. Buckley, Public Defender, William V. Larsen and James L. McCormick, Deputy Public Defenders, for Real Parties in Interest.

STEPHENS, Acting P. J.—The People have petitioned this court for a writ of mandate to require the respondent Superior Court of Los Angeles County to vacate its order granting the motion of the real parties in interest to suppress certain evidence (found "within the house"), pursuant to Penal Code section 1538.5. The trial court denied the motion of the real parties in interest to suppress evidence which was seized outside the house and prior to any entry. At the hearing in the superior court pursuant to Penal Code section 1538.5, that court acted upon the motion to suppress after considering the transcript of the preliminary hearing (upon stipulation) and hearing additional testimony presented at the hearing.

The evidence establishes that Officers Ward and Walker of the Downey Police Department went to the vicinity of 12015 Patton Street, Downey, in response to a complaint by a Mrs. Mendoza that people were shooting from their bathroom window at her house with a BB gun. On arriving at the address, defendant Zalewski and a minor were observed stand-

ing by a parked vehicle in front of the house. On inquiry, denial of use of a BB gun was made to the officers. Defendant Mace then came out of the 12015 Patton Street address and, in answer to questioning, affirmed the fact that he, Zalewski, and the minor had been shooting the gun.[1] Zalewski and the minor then admitted using the gun. Upon inquiry as to the whereabouts of the gun, the minor stated it was in the trunk of Zalewski's car. Zalewski, giving consent, opened the trunk, exposing to view the BB gun, an electric guitar, a transistor radio, and a tool box containing tools. All of the items appeared to be new. The gun bore a warranty sticker, and some of the tools had tags on them. The tools had the name "Western Auto Supply" on them. At this time, in the words of Officer Ward: "I felt they possibly had been taken from a store and that they should not have them, or they should have a receipt for them or something of that type." One of the suspects stated that the articles had come from "Sears." Officer Walker, from outside the car, looked into the open glove compartment and observed two packages of Zig-Zag cigarette papers. He asked Zalewski if it was all right if he looked into his car, and consent was given. Walker entered the car and searched it.[2]

After Walker completed his search of the car, he asked defendant Mace "if it would be okay to go into his house to see—for the neighbors would not have to know what we were discussing out in the front yard." Mace said, "Yes." The three suspects and the two officers entered the house. Upon enteirng, the officers observed a pipe in an upright position on a coffee table, a television set with a label or price tag still on it, and two small radios with price tags from Western Auto Supply. Officer Walker walked to the coffee table, looked into the bowl of the pipe, and saw what he believed to be marijuana debris and seeds. All suspects were then placed under arrest for possession of marijuana; duly warned as to their constitutional rights; and a search of the house was conducted. Other articles were found in the course of the search, and upon call, a police detective came to investigate what Walker concluded to be a possible burglary of a Western Auto

[1]Any question of a *People* v. *Aranda* (63 Cal.2d 518 [47 Cal.Rptr. 353, 407 P.2d 265]) violation is not before us at this time.

[2]At the time of the preliminary hearing, the result of that search was excluded as being beyond the consent given to merely *look*, rather than to *enter* and *search*. However, at the time of hearing on the section 1538.5 motion, testimony was admitted that Walker found not only the Zig-Zag papers, but marijuana debris and seeds in the glove compartment.

Supply store. This suspicion was confirmed as fact. Subsequently, Zalewski was charged with burglary (Pen. Code, § 459), and Mace, with receiving stolen property (Pen. Code, § 496). It is relative to these charges that the result of the searches and seizures are sought to be suppressed. Any evidence of marijuana seized is not herein involved.

The trial court denied the motion to suppress the evidence of items found in the search of the vehicle (the BB gun, guitar, transistor radio, and tool box with tools), all of which were contained in the car trunk, but granted the motion as to the items found in the house, including the television set and the two small radios. The trial court suppressed such evidence on the theory that while ostensible consent had been obtained from defendant Mace, that ''ostensible consent'' was not a knowledgeable, and hence voluntary, consent since it was obtained through subterfuge.

While it may be true that the officers sought admission to the house in the hope that additional contraband might be observed, there existed that ''reasonable cause'' necessary to continue an investigation relative to what was believed to be a possible burglary or possession of stolen property.[3] The products of the search of the trunk, and particularly the BB gun, were not limited to Zalewski. By Mrs. Mendoza's complaint and the admission by Mace to the firing of the BB gun, not only did Mace have possession of what appeared to be stolen property, (the gun), but had it within his house. The *value* of the property received is not a necessary element of proof in a violation of Penal Code section 496. (*People* v. *Fitzpatrick,* 80 Cal. 538, 541 [22 P. 215].) Certainly this provided all the cause necessary for the officers to seek Mace's consent to enter the house. (See *People* v. *Walker,* 203 Cal.App.2d 552, 557 [21 Cal.Rptr. 692] and *People* v. *Ball,* 162 Cal.App.2d 465, 467 [328 P.2d 276].)

We know of no rule of law which requires an investigating officer to make a detailed disclosure of all his reasons, or even his primary reason, for seeking consent to enter a house to the person from whom consent to enter is sought, if the reason he gives is a true reason and one which entitles him to seek such

[3]See *People* v. *Wright,* 153 Cal.App.2d 35, 39 [313 P.2d 868]: ''[T]he deputy saw within the car a quantity of apparently new articles of clothing, folded as they would be for display in a store, and bearing the tags normally seen upon them in such a display. The presence of such articles before daylight in a parked car in a driveway and occupied by a sleeping man is ample to suggest to a reasonable mind that the goods are stolen.''

consent to enter. Subterfuge is not borne of incomplete disclosure of intent so long as the incompleteness does not amount to falseness. In *People* v. *Castro*, 249 Cal.App.2d 168, 176 [57 Cal.Rptr. 108], the court stated: "[W]e do not think any such supposed subjective intent renders unlawful an entry and seizure which the law authorized upon the basis of facts then within the knowledge of the officers." ■ Upon entering the house, additional articles which appeared to be stolen property were immediately observed. The television set and the two small radios were in plain and open view, along with the pipe, which was observed on the coffee table. There then existed probable cause to arrest Mace as well as Zalewski for what appeared to be receiving stolen property. The arrest of Mace for possession of narcotics does not vitiate the subsequent search of the house once probable cause for his arrest existed on any charge of criminal activity. (*People* v. *Shafer*, 183 Cal.App.2d 127 [6 Cal.Rptr. 594]).

Subsequent to the order made by the trial court excluding the evidence found within the house, the trial judge entered a *nunc pro tunc* minute order (to the date of the original order to suppress), as follows:

"Good cause appearing therefor, the minute order is ordered entered nunc pro tunc November 6, 1968, as follows: The motion of the defendant pursuant to Section 1538.5 Penal Code is granted solely on the ground that, although the Court believed the police officers, it has concluded that as a matter of law, the facts testified to by the police officers do not establish a reasonable search or seizure. The Court in granting the motion concluded that the consent of Mr. Mace to enter his house, although given freely and voluntarily by him at a time when he was not under arrest, was, as a matter of law, obtained by means of a subterfuge by the police, to wit, a request to enter the house by the police in the guise of investigation when, undisclosed to Mr. Mace, the police hoped to see evidence of a crime in open view inside the house. The Court further concluded that had Mr. Mace refused to give consent to enter his house, the police would not have entered. Aside from this illegal entry, the Court found no other illegal conduct in this case."

As can be seen, the judge sought to explain his reason for his earlier ruling. While we doubt that a subsequently filed set of findings in explanation of an order directing suppression of evidence is effective for any purpose, the desire to set forth reasons for such ruling if made at the time of the ruling

would be most helpful to the appellate courts, as well as to the parties. (*People* v. *Stuyvesant Ins. Co.*, 261 Cal.App.2d 773, 775, fn. 1 [68 Cal.Rptr. 389].) Here, however, the court based its ruling upon facts it believed to require such ruling "as a matter of law."[4] As we have heretofore stated, there existed neither *subterfuge*, ruse, or trickery.

No ruse was present here as in *People* v. *Reeves*, 61 Cal.2d 268 [38 Cal.Rptr. 1, 391 P.2d 393], where a false report of the arrival of a registered letter was the trickery to achieve the opening of a door. There was no false answer as in *People* v. *Hodson*, 225 Cal.App.2d 554 [37 Cal.Rptr. 575], or even a misleading answer, as in *People* v. *Miller*, 248 Cal.App. 2d 731 [56 Cal.Rptr. 865]. The fact that defendants may have been under a subjective misapprehension as to the officers' intent is immaterial. (*People* v. *Hale*, 262 Cal.App.2d 780, 787 [69 Cal.Rptr. 28].) Similarly, where police officers lawfully enter premises expecting to find contraband, it is immaterial that the contraband so discovered was of a different nature than that which was initially sought. As stated in *People* v. *Roberts*, 47 Cal.2d 374, 379 [303 P.2d 721] : "On the other hand, in the course of conducting a reasonable search they did not have to blind themselves to what was in plain sight simply because it was disconnected with the purpose for which they entered." (See also *Love* v. *United States*, 170 F.2d 32 (officers entered the defendant's house lawfully for purpose of searching for another man; in the course of search, they discovered a distillery in operation).) In *Paper* v. *United States*, 53 F.2d 184, where officers entered lawfully for the purpose of arresting defendant on one charge and discovered an illegal supply of liquor, constituting another offense, the court stated: "[W]here the entry and search are rightful and there is present no element of trespass or fraudulent invasion of the rights of the citizen, there is no reason for excluding evidence of crime discovered in the course of the search. If the officers . . . had discovered in the cellar a counterfeiting plant in operation, would it have been their duty to ignore it? If they had come upon the body of a murdered man, would their testimony as to finding the body be excluded?" (53 F.2d at pp. 184-185.) Thus, there is no pretext or deception where the initial reason for the search is itself lawful. In the present case, pursuant to a valid consent, the officers entered the premises. Once inside, they did not have to

[4]For the importance of findings, see *Townsend* v. *Sain*, 372 U.S. 293 [9 L.Ed.2d 770, 83 S.Ct. 745].

blind themselves to objects which were in plain sight. (*People* v. *Roberts, supra,* 47 Cal.2d at p. 380.) The stolen property was in full view, as was the pipe containing marijuana. These discoveries involved no search, and their seizure violated no rights of defendants. (*People* v. *Davis,* 235 Cal.App.2d 214, 222 [45 Cal.Rptr. 297].)

 We conclude that the record does not justify the trial court's holding as a matter of law that the entry into Mace's residence was obtained by subterfuge, trickery, or ruse. (Cf. *People* v. *Biehl,* 228 Cal.App.2d 805 [39 Cal.Rptr. 868].)

Let a writ of mandate issue directing the Superior Court of Los Angeles County to annul its action of November 6, 1968 suppressing evidence in the case of People v. George Emory Mace, Jr. and Roger Alan Zalewski, No. A-406620, and to make a new and different order, denying the motion to suppress the evidence.

Aiso, J., and Alarcon, J. pro tem.,* concurred.

The petition of the real parties in interest for a hearing by the Supreme Court was denied May 28, 1969. Peters, J., was of the opinion that the petition should be granted.

---

*Assigned by the Chairman of the Judicial Council.