Filed 11/7/25  P. v. Strickland CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(El Dorado)

----

| | |
|---|---|
| THE PEOPLE, | C101900 |
| Plaintiff and Respondent, | (Super. Ct. No. 23CR1135) |
| v. | |
| CHRISTOPHER STRICKLAND, | |
| Defendant and Appellant. | |

Defendant Christopher Strickland was convicted of possession of flammable material, misdemeanor possession of a controlled substance, and misdemeanor possession of controlled substance paraphernalia.  On appeal, he contends that the trial court erred in denying his motion to suppress evidence derived from a warrantless entry into his apartment.  He maintains that sheriff's deputies unlawfully used a ruse to procure his consent to enter.  We disagree and affirm the judgment.

BACKGROUND

I.

In June 2023, Strickland filed a police report with the El Dorado County Sheriff's Department after he received a message claiming a woman with whom he had an online relationship had been kidnapped.  Strickland had not met the woman in person.  El

1

Dorado Sheriff's Deputy Cade Miller called Strickland to follow up on the case. During the phone call, Deputy Miller discussed with Strickland the possibility that his online relationship was a catfishing scam. The alleged kidnappers had demanded a $500 ransom, payable in online gift cards. Strickland explained that he paid the ransom with gift cards, but the alleged kidnappers demanded more money and refused to release the woman. After the phone call, Deputy Miller filed a report and was off work for the next three to four days.

Upon his return, Deputy Miller found numerous text messages from Strickland on his work phone. Strickland was upset and felt that Deputy Miller was not properly investigating the alleged kidnapping. One text message said something like, "something is going to burn tonight." Another said, "whatever happens tonight is on you."

The following day, Deputy Miller and his partner Deputy Steven Fulton went to a local supermarket after one of the employees discovered a suspicious box in the parking lot. The deputies found a cardboard box containing liquor bottles with liquid inside and rags protruding from the top, which appeared to be Molotov cocktails. The deputies dispatched the explosive ordinance disposal and hazardous material units to secure the items for testing and disposal.

A supermarket employee showed the deputies video surveillance of the car suspected to be involved in the incident. Based on the footage, the deputies were able to identify the license plate and determined that the car was registered to Strickland. The surveillance video also showed the individual who drove the car and left the box in the parking lot. The individual was later identified as Strickland. Deputy Miller attempted to contact Strickland but was unsuccessful.

The next day, Deputy Miller and Deputy Fulton went to Strickland's apartment. Strickland eventually invited the deputies inside, and as they passed through the kitchen, they saw what appeared to be Molotov cocktails in a box on the floor. The deputies placed Strickland under arrest.

## II.

The People filed an information charging Strickland with possession of ingredients to make a destructive device (Pen. Code, § 18720); possession of flammable material (Pen. Code, § 453, subd. (a)); misdemeanor possession of a controlled substance (Health & Saf. Code, § 11377, subd. (a)); and misdemeanor possession of controlled substance paraphernalia (Health & Saf. Code, § 11364, subd. (a)).

Strickland filed a motion to suppress pursuant to Penal Code section 1538.5, seeking to exclude evidence of the observations of the sheriff's deputies, Strickland's statements, and all evidence seized during the search of his apartment.

At the hearing on the motion, Deputy Miller and Deputy Fulton both testified. They said that, on the day in question, they were both in uniform. They knocked on Strickland's door and identified themselves as sheriff's deputies. Strickland opened the door and spoke to the deputies as they stood outside. Deputy Miller testified that he told Strickland that he was there to talk about the fraud and kidnapping case. Deputy Miller also testified that he went to Strickland's apartment to investigate the Molotov cocktails placed at the supermarket. Deputy Fulton testified that he went to investigate both that matter and the fraud and kidnapping case, noting that the kidnapping case "was my investigation."

After brief pleasantries and introductions, the deputies asked Strickland questions about the alleged fraud and kidnapping. Strickland mentioned that he had the gift cards in his apartment, and Deputy Fulton asked if they could go inside the apartment to see them. Strickland invited the deputies inside.

The deputies entered the apartment, and Strickland led them through the kitchen and into the living room. As the deputies passed through the kitchen, they both noticed, in plain view, a box on the kitchen floor containing bottles filled with liquid and rags sticking out of the top, which appeared to be Molotov cocktails.

3

Once in the living room, Strickland sat down in a chair, and the deputies remained standing. The deputies discussed the fraud and kidnapping case with Strickland, and at one point he went into the kitchen to look for the gift cards in a trash can. Deputy Miller testified that Strickland did not just answer questions but offered additional information. While talking in the living room, the deputies noticed various knives and swords within five feet of Strickland, but the three continued to have "a general conversation." The deputies also questioned Strickland about the Molotov cocktails found at the supermarket and in his apartment.

The deputies placed Strickland under arrest. Deputy Miller contacted detectives, who obtained a search warrant and seized items from Strickland's apartment. The deputies both testified that Strickland never asked them to leave his apartment. They never demanded that he answer their questions or block any doorways.

The trial court denied Strickland's motion to suppress. The court noted that neither deputy testified that they intended to arrest Strickland when they went to his apartment. "They indicated that they were there to investigate the incident at [the supermarket] regarding the Molotov cocktails, but Deputy Fulton had also testified that they were there to follow up on the report of fraud and kidnapping that had been previously reported by Mr. Strickland." The court recognized that law enforcement may not use a subterfuge or ruse to gain an otherwise impermissible entry into a home. But "[c]learly, to this Court, [that is] not what occurred in this case." The deputies "had consent to enter [the apartment] and once they were inside and they were speaking with Mr. Strickland, they did in fact follow up on the investigation regarding the fraud and also the Molotov cocktails. . . . [The deputies] had a reason to go to Mr. Strickland's home to speak with him and in fact did speak to him about those things." Moreover, the "evidence does not bear . . . out that there was an intent to arrest Mr. Strickland when the deputies responded to his home, but rather to conduct further investigation as to two matters. And once Mr. Strickland consented, invited them into his apartment or his

4

home, [the deputies] observed evidence in plain view which ultimately led to his arrest. As such, the Court finds that the actions of the deputies were lawful in this matter." The court denied Strickland's motion to suppress the evidence viewed and statements obtained on the date of the deputies' entry.

Before the start of trial, Strickland pleaded no contest to the two drug counts (Health & Saf. Code, §§ 11364, subd. (a), 11377, subd. (a)). The trial court later granted Strickland's motion to dismiss the charge for possession of ingredients to make a destructive device. The jury found Strickland guilty of possession of flammable material.

The trial court suspended imposition of Strickland's sentence and placed him on formal probation for two years. It imposed 365 days for the misdemeanor possession of a controlled substance count and 180 days for misdemeanor possession of controlled substance paraphernalia.

Strickland filed a timely notice of appeal.

DISCUSSION

Strickland contends that the evidence derived from the deputies' warrantless entry into his apartment should have been suppressed because the deputies improperly gained his consent to enter by falsely representing that they were there to investigate the fraud and kidnapping case when in fact they intended to investigate Strickland's involvement in placing the Molotov cocktails at the supermarket.

Whether a defendant's consent to a search or seizure "is voluntary depends on the totality of the circumstances; no single factor is dispositive of this factually intensive inquiry. [Citation.] Thus, while police deception as to the purpose of the search is relevant in assessing a suspect's consent, it cannot be analyzed in a vacuum without reference to the surrounding circumstances." (*People v. Avalos* (1996) 47 Cal.App.4th 1569, 1578.) In reviewing a ruling on a motion to suppress, we view the record in the light most favorable to the trial court's ruling. (*People v. Miranda* (1993) 17 Cal.App.4th 917, 922.) We defer to the trial court's factual findings, whether express or implied,

5

when supported by substantial evidence, and we independently determine whether the facts of the challenged search violated a defendant's Fourth Amendment rights. (*People v. Lomax* (2010) 49 Cal.4th 530, 563; *People v. Ferguson* (2003) 109 Cal.App.4th 367, 372.)

In this case, the deputies arrived at Strickland's apartment in uniform and identified themselves as sheriff's deputies. When, upon questioning about the fraud and kidnapping case, Strickland mentioned that he had the gift cards in his apartment, Deputy Fulton asked if they could enter the apartment to see them, and Strickland invited them in. Strickland argues that the deputies engaged in a ruse because the true reason for their request to enter was to investigate the Molotov cocktails and not the fraud and kidnapping case, but the trial court specifically found that the deputies were there "to conduct further investigation *as to two matters*." (Italics added.) This finding was supported by substantial evidence, including Deputy Fulton's testimony that he went to investigate both the Molotov cocktails and the fraud and kidnapping case.

*People v. Superior Court for Los Angeles County* (1969) 271 Cal.App.2d 524 (*Mace*) is instructive. In *Mace*, police officers responded to a report of people shooting a BB gun at a nearby house. (*Id.* at p. 525.) One defendant gave police consent to search his car, where one of the officers found a BB gun and items the police suspected were stolen. (*Id.* at p. 526.) The officer then asked Mace " 'if it would be okay to go into his house to see — for the neighbors would not have to know what we were discussing out in the front yard.' Mace said, 'Yes.' " (*Ibid.*) Upon entering the house, officers observed contraband and arrested three suspects. (*Ibid.*) Rejecting Mace's argument that his consent to the search of his home was involuntary, the Court of Appeal explained: "We know of no rule of law which requires an investigating officer to make a detailed disclosure of all his reasons, or even his primary reason, for seeking consent to enter a house to the person from whom consent to enter is sought, if the reason he gives is a true reason and one which entitles him to seek such consent to enter. Subterfuge is not borne

of incomplete disclosure of intent so long as the incompleteness does not amount to falseness." (*Id.* at pp. 527-528.) Similarly here, the deputies' statement that they were there to investigate the fraud and kidnapping case was not untruthful, and they did in fact further investigate that matter upon entry. Under these circumstances, the incompleteness of the disclosure did not amount to a falsity that vitiated Strickland's consent.

Strickland's reliance on *People v. Reeves* (1964) 61 Cal.2d 268 is unpersuasive. In *Reeves*, police officers arranged for a hotel manager to call the defendant in his hotel room and to falsely tell him that a letter was waiting for him at the front desk. (*Id.* at p. 271.) When the defendant opened the door to go to the front desk, officers positioned outside his room saw a marijuana cigarette inside. (*Ibid.*) The officers entered the defendant's hotel room without his consent, conducted a search, and arrested him. (*Id.* at pp. 271-273.) Our state Supreme Court held that the evidence obtained from the room should have been suppressed, explaining that " 'an entry obtained by trickery, stealth or subterfuge renders a search and seizure invalid.' " (*Id.* at p. 273.) Here, there was no similar trickery or subterfuge. Sheriff's deputies, wearing uniforms, knocked on Strickland's door, identified themselves as law enforcement officers, and told him they were there for investigatory purposes. The deputies' failure to elaborate on all the reasons for their visit before Strickland invited them inside is not like the affirmative deception at issue in *Reeves* and did not render Strickland's consent involuntary. (*Mace*, *supra*, 271 Cal.App.2d at pp. 527-528; *People v. Avalos*, *supra*, 47 Cal.App.4th at pp. 1578-1579; *People v. Shepherd* (1973) 33 Cal.App.3d 866, 869; see also *People v. Hale* (1968) 262 Cal.App.2d 780, 787 [defendant "knew that the persons he was inviting in were policemen"].)

7

## DISPOSITION

The judgment is affirmed.

                                        /s/
                                    FEINBERG, J.

We concur:

/s/
EARL, P. J.


/s/
RENNER, J.