[Crim. No. 12124.   Second Dist., Div. Two.   Apr. 29, 1969.]

THE PEOPLE, Plaintiff and Respondent, v. MICHAEL JOSEPH DONOVAN, Defendant and Appellant.

George V. Denny III, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Mark W. Jordan, Deputy Attorney General, for Plaintiff and Respondent.

HERNDON, J.—Michael Donovan appeals from the judgment entered against him following a jury trial that resulted in his conviction of forging three prescriptions for narcotics in violation of Health and Safety Code section 11715. We shall consider appellant's numerous assignments of error in sequence following a statement of the relevant facts.

Three pharmacists testified that they had sold Dilaudid, a narcotic, in reliance upon prescriptions purportedly issued by Dr. Wilbur Bailey. Dr. Bailey testified that he had never seen the three prescriptions, that the signatures thereon were not in his handwriting, and that he had never given anyone permission to sign his name thereto. A handwriting expert testified that he had compared the writing on the prescriptions with exemplars of appellant's handwriting and concluded that they had been written by the same person.

One Leslie Clendenon, a witness called by the prosecution, testified that he had been guilty of passing these prescriptions and theretofore had entered a guilty plea to one count of an information so charging. But to the surprise of counsel for the

People, he testified that the writing on the face thereof was that of a girl friend. He admitted, however, that prior to the entry of his plea, he had told certain state narcotic officers that appellant had forged the prescriptions. Appellant denied any participation in the offenses.

Initially, appellant contends that the entire case against him is but the fruit of a poisonous tree and therefore his conviction should be set aside. He argues that when Clendenon originally pointed the finger of suspicion at appellant, he did so in reliance upon a promise of leniency. We reject this contention for the reasons set forth in our opinion filed this date in *People* v. *Donovan,* Cr. No. 11397 and Cr. No. 12123, *ante,* pages 417-419 [77 Cal.Rptr. 285], wherein essentially the identical contention was presented.

Appellant next contends that it was improper to allow the prosecution to impeach Clendenon by means of his prior inconsistent statement when he unexpectedly testified at trial that a woman known to him as "Pat" had written the prescriptions rather than appellant as he had previously told the officers. Such impeachment was entirely proper. Although it is usually necessary for the party calling the witness to make a showing of surprise, the surprise in the instant case was obvious and the court so found. In such a circumstance, no further showing is necessary. (*People* v. *Wilson,* 156 Cal.App. 2d 728, 742-743 [320 P.2d 117].)

It is not without significance, of course, that appellant could have prevented this entire incident by the simple expedient of advising counsel for the People in a timely and appropriate manner that there was good reason to believe that Clendenon could no longer be expected to testify in accordance with his earlier statements to the police. That is to say, although Clendenon initially appeared to deny that he had informed appellant and his counsel of his changed version of the facts, he ultimately acknowledged, and appellant's counsel conceded, that he had done so prior to his appearance at the instant trial. Having elected to remain silent while he anticipated his adversary's impending surprise, counsel for appellant is scarcely to be heard to complain of the foreseeable consequences of his own trial tactics.

It may be noted also that this case was tried well before the effective date of the new Evidence Code and therefore there are no issues arising from the possible application of sections 770, 785 and 1235 thereof.[1] (Cf. *People* v. *Johnson,* 68 Cal.2d

---

[1]Section 770 of the Evidence Code provides:
"Unless the interests of justice otherwise require, extrinsic evidence

646 [68 Cal.Rptr. 599, 441 P.2d 111].) Clendenon's inconsistent prior statements were not admitted as substantive evidence of the matter contained therein but solely to impeach him and thereby, in some degree, to relieve the prosecution of the sting of the unexpected adverse testimony of its own witness. (Cf. *People* v. *Seitcrle,* 65 Cal.2d 333, 338-339 [54 Cal. Rptr. 745, 420 P.2d 217].)

We find no error in the court's questioning of Clendenon which established that appellant and his counsel, as they conceded, were aware of his anticipated change in testimony prior to his presentation by the People. Further, since appellant made no objection thereto during trial, he may not assert error in this regard for the first time on appeal.

Similarly, it was not error to restrict appellant's efforts, under the guise of *"cross-examination,"* to "rehabilitate" Clendenon, *the People's witness.* If appellant wished to introduce further substantive evidence from Clendenon concerning the forging of the prescriptions he had issued and his motives for having made prior inconsistent statements, he need only have called him as his own witness, which, in a pragmatic sense, he was. Actually, the "cross-examination" allowed appellant was extremely liberal and he was able to develop from the lips of "the People's witness" Clendenon's assertion that he had chivalrously lied in the first instance in order to protect a female acquaintance.

Appellant contends that it was error to refuse his requested instruction that Clendenon was an accomplice as a matter of law. Not only was the jury adequately instructed on the issue of accomplice testimony in that CALJIC Instructions Nos. 821, 822 (Rev.) and 829 were given at appellant's request, but in the unusual context of the instant case any further instruction probably would have been harmful to appellant.

The obvious reason an accused desires instructions to the

---

of a statement made by a witness that is inconsistent with any part of his testimony at the hearing shall be excluded unless:

"(a) The witness was so examined while testifying as to give him an opportunity to explain or to deny the statement; or

"(b) The witness has not been excused from giving further testimony in the action."

Section 785 of the Evidence Code provides:

"The credibility of a witness may be attacked or supported by any party including the party calling him."

Section 1235 of the Evidence Code provides:

"Evidence of a statement made by a witness is not made inadmissible by the hearsay rule if the statement is inconsistent with his testimony at the hearing and is offered in compliance with Section 770."

effect that an accomplice's testimony requires corroboration and is to be viewed with distrust is that the witness he regards as an accomplice has given testimony tending to incriminate him. In the instant case, Clendenon was asserting that he was *not appellant's accomplice* and, further, that *appellant was innocent of the offense charged.* The prosecution could scarcely be expected to corroborate such testimony and appellant's interests would not have been served by having the jury instructed that, *as a matter of law,* they should view such testimony with suspicion.

Appellant next contends that the court erred in permitting the handwriting expert to testify concerning the results of his comparison of the writing upon the prescriptions with appellant's handwriting on booking records taken at the time of certain of his earlier arrests without first requiring the prosecution to establish probable cause for each of the precedent arrests. The short answer to this contention is that neither appellant's testimony nor that of the officers who had participated in these earlier arrests disclosed any lack of probable cause therefor, nor any foundation for a contention that probable cause was lacking.

At the trial the principal contention advanced by appellant in this regard was that although the booking procedures utilized at the time of these earlier arrests were neither intended nor designed to obtain evidence relating to the offenses for which he then had been taken into custody (cf. *People* v. *Sesslin,* 68 Cal.2d 418, 426 et seq. [67 Cal.Rptr. 409, 439 P.2d 321]), nevertheless, he had not "consented" to the booking procedures and had complied therewith only by reason of physical abuse suffered at the hands of the police. After receiving the conflicting evidence on the issue, the court properly resolved this factual conflict against appellant and its determination is binding on appellate review.

Contrary to appellant's contention, he was not prejudiced by the court's ruling requiring him to initiate the presentation of testimony on the issue of alleged coercion in connection with the booking procedures. The court previously had properly determined that a sufficient foundation had been presented to permit receipt of these documents into evidence, at least, in the absence of any challenge to their authenticity or to the manner in which they had been taken. Therefore, the fact that in the course of his *voir dire* testimony on the question of alleged coercion, appellant acknowledged the unquestioned and incontestable fact that the fingerprints, statistical

material and handwriting on the booking slips were his own was not detrimental to him.

██ Handwriting exemplars are nontestimonial in nature. (*Gilbert* v. *California,* 388 U.S. 263, 266-267 [18 L.Ed.2d 1178, 1182-1183, 87 S.Ct. 1951]; *People* v. *Graves,* 64 Cal.2d 208, 210-211 [409 Cal.Rptr. 386, 411 P.2d 14]), and it was therefore within the province of the court to decide any issue relating to the propriety of their use by the handwriting expert for comparison purposes without submitting such issue to the jury. ██ ██ We further hold that it was not an abuse of discretion for the court to deny appellant's request for continuance to obtain a witness who allegedly would have corroborated his assertion that on one occasion he had been mistreated by the police or to sustain an objection to a question addressed to appellant's wife designed to elicit testimony that *appellant had told her* he had been beaten by certain officers.

██ We reject appellant's contention that the burden rested upon the prosecution to prove that the handwriting exemplars given by appellant were not the ''fruits of poisonous trees'' by producing evidence that each of the prior arrests which preceded the giving of the exemplars was made with probable cause. Even if it were to be *assumed,* in the absence of any evidence tending to support the assumption, that any of such prior arrests were without probable cause, appellant's commission of the instant offense constituted a subsequent independent and intervening act ''that dissipated the taint of the [assumed] primary illegality.'' (Cf. *People* v. *Sesslin, supra,* 68 Cal.2d 418, 428.)

If the doctrine of the poisonous tree were to be extended to the extreme length here advocated by appellant, photographs could not be shown to witnesses or victims of crime, fingerprints could not be compared with those on file with the Federal Bureau of Investigation, a suspect's height or weight could not be gleaned from booking documents unless the authorities utilizing these official records were prepared to prove in each instance that the material contained therein had been obtained following an arrest made upon probable cause of a person whose subsequent consent to the booking process had been free and voluntary and not dictated by an implied assertion of authority by the police.

Society, speaking through its highest courts, may properly utilize appropriate sanctions designed to deter the officers it has employed for its own protection from using illegal

methods in the exercise of the authority given them, but in this case we can perceive of no sufficient reason to impose judicial blindfolds designed only to hinder effective and reasonable means of law enforcement.

Finally, we are unable to find reversible error in the fact that when appellant was asked on cross-examination for impeachment purposes what prior felony convictions he had suffered, he had replied ''Statutory rape, possession of narcotics.'' It is not entirely clear whether appellant's objection to this incident is directed against impeachment by proof of a prior felony conviction in general or to the fact that if the ''possession of narcotics'' conviction referred to by appellant was the conviction we affirmed this date in Cr. No. 11397 and Cr. No. 12123, no judgment has been imposed therein at the time of the instant trial. If his contention is the general one, it is answered by the observation that impeachment in this fashion traditionally has been authorized in California and recently has been codified in our new Evidence Code section 788. If it is the specific, then it is met by noting that the reference to this ''conviction,'' if such it was, was appellant's response to a proper question to which no objection was interposed and no motion was made to strike the answer. In addition, so far as the record before us indicates, appellant may have been referring to some other and wholly different prior offense.

The judgment is affirmed.

Roth, P. J., and Fleming, J., concurred.

A petition for a rehearing was denied May 20, 1969, and appellant's petition for a hearing by the Supreme Court was denied June 25, 1969.