[Crim. No. 18885. First Dist., Div. Four. Dec. 19, 1979.]

THE PEOPLE, Plaintiff and Respondent, v.
LEONARD LATHROP, Defendant and Appellant.

**COUNSEL**

John B. Schmocker for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Robert A. Granucci and Ronald E. Niver, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**RATTIGAN, Acting P. J.**—Appellant Leonard Lathrop was charged by information, in two counts, with violations of Health and Safety Code section 11352 (transporting, selling, furnishing, or giving away cocaine). His motion to suppress evidence, pursuant to Penal Code section 1538.5, was denied by the trial court after an evidentiary hearing. He then entered a plea of guilty to count one, the court granted him probation on that count, and count two was dismissed. He appeals from the order granting him probation on count one.

The sole question presented is whether the trial court erred in denying appellant's motion to suppress. The evidence addressed by the motion consisted of quantities of cocaine he sold to undercover police officers, in his apartment, after they had gained entry to the premises. The evidence of these events, as shown at the hearing on the motion, may be summarized as follows:

Appellant lived in unit No. 117 of an apartment complex in Hayward. The manager of the complex called the Hayward Police Department and complained that he had seen an unusually large number of persons coming and going from appellant's apartment and that he suspected drug trafficking. He asked the police for assistance and offered to give them the key to apartment No. 118, which was vacant at that time and situated next to appellant's apartment.

Officers Lee Thoming and Paul Gaines worked in an undercover capacity with the narcotics investigation unit of the Hayward Police Department. They went to the vacant apartment (No. 118), using the manager's key, to investigate his complaint.

Before they left the premises, Officer Thoming knocked on appellant's door. A man later identified as "Dave" answered. The officer told Dave he was moving in next door and asked if he could use the telephone. Appellant, who was inside the apartment, said: "Come on in. You can use the phone." Officer Thoming walked into the apartment, the two men introduced themselves to him, and appellant told him to go ahead and make his call.

Officer Thoming walked directly to the telephone, which was located near a table in the kitchen of the apartment. As he was dialing, he saw various items on the table. He described them in his testimony as "[s]everal bindles of or plastic vials which contained a white, powdery or crystally [*sic*] substance, a pile of...what I suspected to be marijuana, a baggy which contained what I believed to be marijuana, a small, square mirror with the word 'cocaine' on it, [and] a single-edged razor blade."

Based on his experience with narcotics and their packaging, Officer Thoming concluded that the items were contraband. As soon as he saw them, and while he was still holding the telephone, he said to appellant: "Looks like you and I could get together and do some business." Appellant replied, "Okay...I deal coke, crank, grass, whatever you want." The officer promptly hung up the telephone, and they discussed a sale of cocaine. Appellant said the price was $90 per gram. Officer Thoming said "that was the going price," left the apartment, and joined Officer Gaines in the vacant unit next door.

The two officers went to the police station, obtained some money, and returned to the apartment complex. Officer Thoming again knocked on appellant's door and was admitted by Dave. The officer told appellant he wanted to buy a gram of cocaine. Appellant sold him two small bindles of cocaine for $90. The officer then brought Officer Gaines into the apartment and introduced him to appellant as his "roommate." The officers arranged to make another purchase of cocaine, went back to the police station, obtained more money, and returned to the apartment complex. Officer Gaines went to appellant's apartment alone. Appellant invited him in and sold him a gram of cocaine. The officers left and obtained a warrant for appellant's arrest. He was apparently arrested soon afterward.

This evidence demonstrates that Officer Thoming initially gained entry to the apartment by a patent ruse and without having probable cause to arrest appellant. ■ The entry in these circumstances invokes the rules "that an entry obtained by trick, ruse, or subterfuge is illegal and that any prosecution based on such an illegal entry cannot be allowed to stand." (*In re Robert T.* (1970) 8 Cal.App.3d 990, 993 [88 Cal.Rptr. 37]; *People v. Reeves* (1964) 61 Cal.2d 268, 273 [38 Cal.Rptr. 1, 391 P.2d 393]; *People v. Mesaris* (1970) 14 Cal.App.3d 71, 75, fn. 2 [91 Cal.Rptr. 837].) ■ Application of the rules re-

quires reversal unless, as the Attorney General urges, the connection between the initial entry and the seizure of the evidence was broken by "attenuation."

The "attenuation" argument derives from the following language in *Wong Sun v. United States* (1963) 371 U.S. 471 [9 L.Ed.2d 441, 83 S.Ct. 407]: "We need not hold that all evidence is 'fruit of the poisonous tree' simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is 'whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.' [Citation.]" (*Id.*, at pp. 487-488 [9 L.Ed.2d at p. 455].) The Attorney General argues that "the decision of appellant to sell cocaine to the police officers was an intervening independent act which attenuated the connection between the observation of the contraband in his apartment and his subsequent illegal conduct."

The quoted argument does not accurately paraphrase the *Wong Sun* test. According to that test, the "connection" to be examined for "attenuation" is not between the "observation of the contraband" and appellant's "subsequent illegal conduct." As we have already indicated, it is the "connection" between the illegal entry by Officer Thoming in the first instance and the officers' acquisition of the contraband afterward. (See *Wong Sun v. United States* as quoted *ante.*)

That connection was not "attenuated" within the meaning of the *Wong Sun* test. When Officer Thoming observed the array of items on the kitchen table, he reasonably concluded from their appearance and quantity that appellant was selling cocaine. He demonstrated this judgment when he immediately suggested to appellant that they could "do some business": i.e., that he was interested in buying what appellant was selling, which was virtually advertised by the legend on the "small, square mirror." Appellant's reply to the suggestion was immediate and responsive ("Okay...I deal coke,...whatever you want").

Officer Thoming's observations were tainted by the illegality of the entry because they followed it, as immediate consequences, within a matter of seconds. His suggestion to appellant exploited the illegality, also within seconds. Appellant's reply to the suggestion was similarly immediate. There was no *intervening* or *independent* "decision," on his

part, to do what he was obviously doing at the moment of the initial illegality and during its exploitation by Officer Thoming. There was thus no "attenuation" of the illegality at any point during the officer's observations and his conversation with appellant near the telephone. No such "attenuation" occurred, and the exploitation continued, in the course of the selling transactions which followed the conversation. The full sequence was not broken, the "connection" between any point in it and the "primary illegality" was not broken, and the contraband finally acquired by the two officers was not "'come at...by means sufficiently distinguishable to be purged of the primary taint.'" (*Wong Sun v. United States, supra,* 371 U.S. 471 at pp. 487-488 [9 L.Ed.2d 441 at p. 455]. See also *People v. McInnis* (1972) 6 Cal.3d 821, 825, fn. 1 [100 Cal.Rptr. 618, 494 P.2d 690] and cases there cited.)

The decisions principally cited by the Attorney General do not command a contrary result. In two of them, police acquisition of the challenged evidence was not preceded by constitutionally illegal conduct on the part of the officers involved. (*People v. Rand* (1972) 23 Cal.App.3d 579, 581-583 [100 Cal.Rptr. 473]; *People v. Donovan* (1969) 272 Cal.App.2d 426, 429-430, 433 [77 Cal.Rptr. 293].) In the others, there were unmistakably "independent acts" which produced the "attenuation" of "primary illegality." (*People v. Eastmon* (1976) 61 Cal.App.3d 646, 649-651, 652-654 [132 Cal.Rptr. 510] [occupants of illegally entered premises induced by promises of leniency to act as police agents in transacting a "separate, independent voluntary sale" of narcotics by the defendant at another place later]; *People v. Prendez* (1971) 15 Cal.App.3d 486, 487-489 [93 Cal.Rptr. 180] [illegal entry prompted the defendant's "independently conceived" decision to flee the premises entered]; *People v. Guillory* (1960) 178 Cal.App.2d 854, 855-857 [3 Cal.Rptr. 415, 80 A.L.R.2d 1077] [defendant prosecuted for bribery had "spontaneously" offered a bribe to police officers after entry and arrest for narcotics violation].) For the reasons indicated, these decisions are wholly distinguishable.

The challenged evidence having been "'come at by exploitation'" of the "'primary illegality,'" and not "'by means sufficiently distinguishable to be purged of the primary taint,'" it was inadmissible as the "'fruit of the poisonous tree.'" (*Wong Sun v. United States, supra,* 371 U.S. 471 at pp. 487-488 [9 L.Ed.2d 441 at p. 455].) The Attorney General disputes this result on the stated basis that it means appellant may "sell cocaine from his apartment for the rest of his life with immunity

conferred upon him by a single police illegality." The result portends no such prospect. We are holding only that the Fourth Amendment consequences of an illegal entry by police officers were not avoided by "attenuation" within seconds and hours after it was made. The motion to suppress evidence was erroneously denied.

The order granting probation is reversed.

Christian, J., and Poché, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied February 14, 1980. Clark, J., and Manuel, J., were of the opinion that the petition should be granted.